TRAILMOBILE, INC., Plaintiff in Error, v. PHILLIP CHAZEN et al., Defendants in Error.—370 S.W. (2d) 840.

Eastern Section.   March 12, 1963.

Certiorari Denied by Supreme Court September 11, 1963.

Fowler, Rowntree & Fowler, Knoxville, for plaintiff in error.

Hodges, Doughty & Carson, Knoxville, for defendants in error.

McAMIS, P. J. Plaintiff in error has filed a petition to rehear our previous action in striking the assignments of error because not filed within the time allowed by the rules and extensions of time granted by a member of the Court.

The petition to rehear which is sworn to reveals certain extenuating circumstances, particularly the appointment on November 2, 1962, of the attorney who represented plaintiff in error in the Circuit Court as Law Director of the City of Knoxville. Without elaborating on the circumstances, the Court is constrained to grant the petition to rehear, set aside the judgment heretofore entered and determine the case on its merits.

Phillip Chazen and wife instituted this suit against Trailmobile, Incorporated, to recover the sum of $12,-500.00 for the loss by fire of a building owned by plaintiffs

while occupied by defendant Trailmobile, Inc. under lease contract, a copy of which was exhibited with the declaration.

There were two trials before the Court and jury. The first trial resulted in a verdict for defendant which was set aside and a new trial granted because of misconduct of the jury during its deliberations in that one or more of the jurors made statements as to the proper manner of operating welders. The second trial resulted in a verdict and judgment for $12,500.00 from which defendant prosecutes the present appeal.

The declaration is in two counts. The first count sounding in tort charges that the building was destroyed as the result of a fire caused by the wilful and negligent act of one of defendant's employees engaged in using an acetylene welder. The second count is predicated on an alleged breach of a covenant of the lease requiring defendant, subject to certain excepted contingencies, to return the property to the lessors in good condition at the end of the term. A nonsuit was taken as to the second count following the first trial and it need not be further noticed.

Pursuant to an order of the Court requiring it to plead its defenses specially, defendant filed, among others, its special plea Number 4 asserting that plaintiffs, Chazen and wife, waived the right to sue defendant, as lessee, for loss of the building by fire under the following provision of the lease:

"The Lessors waive all right of recovery against the Lessee for any loss occurring to the demised premises resulting from *fire* and the perils of windstorm, hail, explosion, riot, riot attending a strike, civil commotion,

aircraft and smoke; and the Lessee likewise waives all right of recovery against the Lessors for any similar loss or losses occurring to any property of the Lessee in the demised premises.''

Defendant filed as exhibits to the plea certain letters which it averred amounted to an amendment of the original lease contract as further evidence that plaintiffs waived the right to sue for loss of the building by fire.

To this plea plaintiffs filed a demurrer on the following ground:

''The provision of the lease agreement whereby the lessor waives all right of recovery against the lessee for any loss occurring to the demised premises resulting from fire, is illegal, void, invalid, and unenforceable, as against public policy, which prohibits one from contracting against liability for his own negilgence * * *.''

We consider first defendant's assignment number one directed to the action of the Court in sustaining the demurrer to its special plea Number 4 above mentioned.

We have a number of reported decisions in this State dealing with considerations of public policy relating to exculpatory provisions of contracts. Until Moss v. Fortune, 207 Tenn. 426, 340 S.W.(2d) ·902, hereinafter discussed, there appears to have been some uncertainty as to the validity of such contracts and whether they are to be strictly construed as a matter of public policy.

Robinson et al. v. Tate, 34 Tenn.App. 215, 236 S.W. (2d) 445, dealt with the liability of a landlord for damages to the tenant's merchandise caused by steam escaping from a defective valve. The defendant lessor relied

upon a provision of the lease that "the lessee accepts space as is." The evidence showed that the lessor was aware of the defect at the time of the letting and that plaintiff was not. This Court in an opinion by Judge Swepston found that the evidence justified a finding of negligence but said:

"We hold, therefore, that the contract for exemption from liability for negligence is valid.

"It is said in argument, and the above cited authorities so state, that such agreements are to be construed strictly. 32 Am.Jur. 615, Section 739.

"While many of the cases found in the books seem to go beyond the limit of reasonable construction, we think a court should not deliberately emasculate a contract. The better approach is to attempt to arrive at the real intention of the parties in the light of the language used and in view of the subject matter and circumstances of the execution of the contract. Tennessee has long ago adopted this approach and all rules of technical construction of instruments must yield to the intention of the parties.

"In Memphis & Charleston R. R. Co. v. Jones, 39 Tenn. 517, the contract for the hiring of slaves provided: 'And all risks incurred, or liability to accidents, while in said service, is compensated for and covered by the pay agreed upon; the said railroad company assuming no responsibility for damages from accident, or any cause whatever.' Held, railroad not exempt from liability for wilful and gross negligence in running over a slave who was asleep on the track in plain view for a long distance ahead of the train. The court construed it according to the obvious intention and understanding of the parties.

"And so in Dodge v. Nashville, C. & St. L. Ry., 142 Tenn. 20, 215 S.W. 274, 7 A.L.R. 1229, the baggage check case with the limitation of liability printed on the back and no notice on the face or otherwise, where it was held, not binding. The customer had no reason to consider it anything more than an identification check.

"In Carolina [C. & O.] Ry. Co. v. Unaka Spring[s] Lumber Co., 130 Tenn. 354, 170 S.W. 591, 597, supra, it was contended that the stipulation exempted the railroad from fires set by locomotives on the main track as well as on the plaintiff's spur track.

"Our Court said: 'We think that, under a fair construction of the language used,' the exemption was confined to fires emanating from locomotives, etc. on the spur track—the subject of the contract."

Bishop v. Associated Transport, Inc., 46 Tenn.App. 644, 332 S.W.(2d) 696, was a suit by a lessor against the lessee for destruction of the leased building by fire. The lease contract required the lessee to return the premises to the lessor "in a reasonably good state of repair, ordinary wear and tear and *damages by fire * * *, however, specifically excepted.*"

A sub-lessee wilfully burned the building for which act he was convicted of arson. Since the defendant was in no way connected with the burning the action was strictly ex contractu. In responding to defendant's contention that the contract excepted liability for loss by fire the Court said:

"The language of section 9 of the lease was intended to cover damages by fire in the ordinary sense of the word, to wit, fire that occurred by accident or from con-

ditions beyond the control of the lessee or sublessee and not fire which was deliberately set by one of the parties. We think that where the leased premises were destroyed by fire which was deliberately set by the lessee or by one for whose violation of the covenants of the lease the lessee is liable, there was a breach of the covenant to return the premises in good repair and that the 'Fire excepted' exclusion has no application.''

Although the opinion cites authorities holding that a tenant whose negligence causes a destruction of the building by fire is liable on his covenant to restore the property to the lessor even though it excepts loss by fire, the holding of the majority of the Court is summed up in the above quoted statement relating to a fire deliberately set. The opinion makes no reference to the underlying public policy or the rule of strict construction which some courts have applied to exculpatory clauses but which seems to have been rejected in Robinson et al. v. Tate (supra), 34 Tenn.App. 215, 236 S.W.(2d) 445. It is to be remembered also that the action was ex contractu and involved a construction of the covenant to restore and not a waiver of loss by fire such as here involved.

Moss v. Fortune (supra), 207 Tenn. 426, 340 S.W.(2d) 902, had not been reported when the learned trial judge acted on the demurrer to the special plea or when Bishop v. Associated Transport, Inc., supra, was decided by this Court. The Moss case was a suit by the bailee for hire of a riding horse for personal injuries sustained as the result of a defective stirrup strap. The defendant by plea set up the defense that plaintiff assumed the risk by the following writing: ''I am hiring your horse to ride today and all future rides at my own risk.''

The plaintiff then demurred to the plea and when his demurrer was overruled stood on his demurrer and appealed. In the opinion affirming the case, Mr. Justice Felts said:

"It is well settled in this State that parties may contract that one shall not be liable for his negligence to another but that such other shall assume the risk incident to such negligence. Cincinnati, New Orleans & Texas Pacific Ry. Co. v. Saulsbury, 115 Tenn. 402, 90 S.W. 624; Carolina, C. & O. R. R. Co. v. Unaka Springs Lumber Co., 130 Tenn. 354, 170 S.W. 591; McKay v. Louisville & Northern R. R. Co., 133 Tenn. 590, 182 S.W. 874; Robinson v. Tate, 34 Tenn.App. 215, 236 S.W.(2d) 445.

"To this general rule there are some exceptions, not here material. For instance, a common carrier may not, by contract, exempt itself from liability for a breach of duty imposed on it for the benefit of the public; and a railroad cannot by contract exempt itself from liability 'from willful or gross negligence in running over a slave, asleep on the track.' Memphis & Charleston R. R. Co. v. Jones, 39 Tenn. 517. See review of the cases by Judge Swepston in Robinson v. Tate, supra, 34 Tenn.App. 226-230, 236 S.W.(2d) 445.

"The case of Dodge v. Nashville, C. & St. L. Ry. Co., 142 Tenn. 20, 215 S.W. 274, 7. A.L.R. 1229, relied on by plaintiff, is not in point. There, it was held that the railroad was not exempted from liability for the value of lost baggage, by a limitation of liability printed on the back of the baggage check, but which was not in anywise called to the attention of the customer, and of which the customer had no actual knowledge.

"In the case before us, however, plaintiff had actual knowledge of, and signed, the written agreement which was pleaded in bar of his right to maintain this suit for alleged negligence. His demurrer to this plea admits the truth of it, and he is in no position to claim that he had no knowledge of it or was not bound by it."

It is to be noted that among the cases cited by Mr. Justice Felts is Robinson v. Tate, 34 Tenn.App. 215, 236 S.W.(2d) 445, above discussed, where, in effect, the rule of strict construction was rejected in favor of the rule of reasonable construction in an effort to arrive at the real intention of the parties "in view of the subject matter and circumstances of the execution of the contract." Carolina C. & O. Railway Co. v. Unaka Springs Lumber Co.; McKay v. Louisville & Northern Railroad, and New Orleans & Texas Pacific Railway Co. v. Saulsbury, also cited, expressly hold that where the contract is not one affecting a public duty the parties may contract against liability for negligence and that such contracts are not against public policy.

■ ■ In the excellent brief for plaintiffs, cases from other jurisdictions are cited which follow the rule of strict construction against the party relying upon exculpatory clauses in contracts. Courts following that rule generally hold that unless the word "negligence" is used in the exculpatory clause it can not be enforced to avoid liability for negligence. These cases, however, proceed on the theory that such contracts are against public policy and will not be enforced unless the language used is directly applicable. We can not follow them because, as we have seen, the public policy of Tennessee favors freedom to contract against liability for negligence. We

must, therefore, apply the rule of reasonable construction applicable to all other contracts, the cardinal rule being to arrive at the true intention of the parties.

In this case the Lessee, in consideration for being relieved of liability for the loss of the building by fire, agreed to relieve the Lessor for similar losses of its own property while on the premises of the Lessor. It may well be that both parties simply agreed to carry insurance on their respective properties to cover such losses.

It is our opinion the demurrer to this special plea was improperly sustained and the first assignment is sustained.

Since for the reason indicated the case must be reversed and remanded, it is not deemed necessary to treat at length other questions raised by the assignments. A number of them are directed to the sustaining of demurrers to other special pleas. We have considered them and find no error. We also find without merit the assignment that the Court erred in granting a new trial after the first trial because of misconduct of the jury. This action was proper. Travelers Ins. Co. v. Hoard, 47 Tenn. App. 565, 340 S.W.(2d) 260. There was abundant evidence of negligence in handling the acetylene torch and defendant's motion for peremptory instructions at the close of all the evidence at both trials was properly overruled.

Reversed and remanded with costs of appeal taxed to defendants in error, plaintiffs below.

Cooper, J., and Taylor, Special Judge, concur.